UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

VARDAN K.,

          Petitioner,

    v.

WARDEN OF THE CALIFORNIA CITY
DETENTION CENTER,

          Respondent.

No. 1:26-cv-01128-TLN-CSK

A # 027-667-681

**ORDER**

This matter is before the Court on Petitioner Vardan K.'s ("Petitioner") *pro se*[1] Motion for Temporary Restraining Order ("TRO").[2]  (ECF No. 1.)  Respondent filed a response.  (ECF No. 7.)  Petitioner filed a reply.  (ECF No. 12.)  For the reasons set forth below, Petitioner's motion for TRO is GRANTED[3] and Respondent is ORDERED TO SHOW CAUSE why this Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner.

///

---

[1]  Since Petitioner's initial filing of his motion for TRO, the Court appointed counsel who is now enrolled in this case and has filed briefs on behalf of Petitioner.  (ECF Nos. 6, 8, 12.)

[2]  As stated in the Court's February 13, 2026 Order, the Court construes Petitioner's pleading as a motion for a TRO based on the substance of the brief and the relief requested therein.  (ECF No. 6 at 1.)

[3]  On March 13, 2026, the Court issued a minute order granting Petitioner's motion for TRO and ordering his immediate release.  (ECF No. 13.)  This Order explains the Court's reasoning.

1

## I.    FACTUAL BACKGROUND

The instant action arises from Petitioner's allegedly unlawful detention.  (*See* ECF No. 1.)  Petitioner asserts that he came to the United States as a refugee from the U.S.S.R. in 1986 when he was twelve years old.  (*Id.* at 2.)  On May 25, 1999, an immigration judge ordered Petitioner removed.  (ECF No. 7-1 at 4.)  Sometime in 1999, Petitioner was released from immigration custody.  (ECF No. 12 at 3.)  Since then, Petitioner has checked in with U.S. Immigration and Customs Enforcement ("ICE") every year for the past 26 years.  (ECF No. 1 at 2.)  Petitioner was re-detained by immigration officials when he reported to the immigration office on December 29, 2025.  (ECF No. 7-1 at 2.)

On February 2, 2026, Petitioner filed a petition for writ of habeas corpus and motion for TRO.  (ECF No. 1.)  Petitioner challenges his detention as violating his due process rights and seeks immediate release.  (*Id.* at 13–19.)  On February 13, 2026, this Court directed Respondent to file a response to Petitioner's motion.  (ECF No. 6.)  On February 20, 2026, Respondent filed a response.  (ECF No. 7.)  On March 5, 2026, Petitioner filed a reply.  (ECF No. 12.)

## II.    STANDARD OF LAW

For a TRO to issue, courts consider whether Petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test.  *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  The Court may weigh Petitioner's showing on each of the *Winter* factors using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a TRO even where there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, if "serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in Petitioner's favor in order to succeed in a request for a TRO.  *Id.* at 1134–35.

///

**III.    ANALYSIS**

The Court considers each of the *Winter* elements in turn.

A.    Likelihood of Success on the Merits

Petitioner argues that his detention without a bond hearing violates his due process rights. (ECF No. 1 at 13.)  In opposition, Respondent claims Petitioner is detained under 8 U.S.C. § 1231(a)(6) ("§ 1231(a)(6)"), which authorizes ICE to detain non-citizens with final orders of removal to effectuate deportation.[4]  (ECF No. 7 at 2–3.)  Respondent argues Petitioner has not even been detained for 60 days and is creating an obstacle to his removal by not assisting with obtaining a travel document.  (*Id.* at 3.)  In reply, Petitioner asserts Respondent is incorrect to rely on § 1231(a)(6) because it does not permit immigration officials to re-arrest and re-detain released noncitizens without notice or process at any time after an order of removal has been final for more than 90 days.  (ECF No. 12 at 6.)  Instead, Petitioner contends that because his final order of removal "became final long ago," the 90-day removal period has expired and he is subject to supervision under § 1231(a)(3), not detention.  (*Id.*)

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law.  *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent.").  These due process rights extend to immigration proceedings, including deportation proceedings.  *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the

---

[4]    Respondent also makes several arguments about the appropriate form of release available in a habeas petition, whether the Court can enjoin Petitioner's removal from the United States, and whether the Court lacks jurisdiction to enjoin removal to a third country.  (ECF No. 7 at 5–7.) The Court declines to address these arguments at this juncture.

Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

i.      Liberty Interest

"Freedom from imprisonment — from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025). To determine whether an individual's specific conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept. 9, 2025).

Here, Petitioner gained a protected liberty interest in his continued freedom when he was released on supervision in 1999. (ECF No. 1 at 2; ECF No. 12 at 4.) Under *Morrissey*, this release was an implied promise that Petitioner would not be re-detained during the pendency of his immigration proceedings if he abided by the terms of his release. Petitioner's liberty interest has been strengthened over time. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest); *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025) ("Accordingly, a noncitizen released from custody pending immigration proceedings has a protected liberty interest in remaining out of custody."). Thus, Petitioner has a clear interest in his continued freedom.

The fact that Petitioner has a final order of removal does not alter this Court's analysis. First and foremost, "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." *Hernandez*, 872 F.3d at 981. Thus, even if ICE had discretion to arrest and detain Petitioner pursuant to the final order of removal, its exercise of that discretion must comport with due process. *See Garcia v. Andrews*, No. 1:25-CV-01006 JLT

SAB, 2025 WL 2420068, at *9 (E.D. Cal. Aug. 21, 2025) (finding statutory authority to revoke bond or parole "does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

Further, Respondent is incorrect to rely on § 1231(a)(6) as the basis for Petitioner's re-detention.  Respondent claims § 1231(a)(6) allows Petitioner to be detained beyond the removal period if he is unlikely to comply with the order of removal.  (ECF No. 7 at 2.)  But § 1231(a)(6) "isn't a free-roaming right to arrest and detain people any time [ICE] sees fit[.]"  *Diallo v. Joyce*, No. 25-CV-9909 (AS), 2025 WL 3718477, at *2 (S.D.N.Y. Dec. 23, 2025).  Rather, § 1231(a)(6) allows for the *continued* detention, not re-detention, of certain noncitizens after the 90-day removal period.  *Id.* (citing *Zadvydas*, 533 U.S. at 683 ("After entry of a final removal order and during the 90-day removal period, however, [noncitizens] must be held in custody . . . Subsequently, as the post-removal-period statute provides, the Government 'may' *continue to detain* [a noncitizen] who still remains here or release that [noncitizen] under supervision.") (internal citations omitted) (emphasis added)).  That § 1231(a)(6) applies to continued detention and not re-detention is clear by the terms of its own text, wider statutory scheme, and relevant regulations.  *Id.* (finding the "and, if released" language of § 1231(a)(6) reflects that the statute applies to individuals already in detention, the Government's reading would override § 1231(a)(3), and the regulations that operationalize § 1231(a)(6) refer to "continued detention").

Instead, because Petitioner's final order of removal "became final long ago," the 90-day removal period has expired and he is subject to supervision under § 1231(a)(3), not detention.  *Alva v. Kaiser*, No. 25-CV-06676-RFL, 2025 WL 2419262, at *3 (N.D. Cal. Aug. 21, 2025) ("As mandated by Congress, the default status after the 90-day removal period is therefore release on conditions, not detention."); *see also Diaz v. Wofford*, No. 1:25-CV-01079 JLT EPG, 2025 WL 2581575, at *4 (E.D. Cal. Sept. 5, 2025) (finding that where a noncitizen's removal order "became final long ago . . . he is no longer even arguably subject to mandatory detention under § 1231(a)," but is instead subject to supervision under § 1231(a)(3)).  The Court therefore rejects Respondent's argument that Petitioner can be re-detained under § 1231(a)(6).  Petitioner has a

protected liberty interest in his continued freedom protected by the Due Process Clause.

*ii.*        *Procedures Required*

Having found a protected liberty interest, the Court examines what process is necessary to ensure any deprivation of that interest accords with the Constitution.  The Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).  Due process rights in the immigration context "must account for the government's countervailing interests in immigration enforcement." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022).

First, Petitioner has a substantial private interest in remaining free from detention.  As previously stated, Petitioner was released from immigration custody more than 26 years ago and has developed strong ties to the community.  (ECF No. 12 at 7.)  Despite this, Petitioner has now been detained for more than two months without prior notice or an opportunity to respond to the reasons for revocation of his release.  Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention.  *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable, as Petitioner has received virtually no procedural safeguards such as a bond or custody redetermination hearing.  *A.E. v. Andrews*, No. 1:25-CV-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025); *R.D.T.M. v. Wofford*, No. 1:25-CV-01141-KES-SKO, 2025 WL 2686866, at *6 (E.D. Cal. Sept. 18, 2025) ("Civil immigration detention, which is 'nonpunitive in purpose and effect,' is justified when a noncitizen presents a risk of flight or danger to the community.").  Because Petitioner has a final order of removal, the revocation of his release is governed by 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13.  *Diaz*, 2025 WL 2581575, at *4.  These regulations allow ICE to re-detain a noncitizen "if, on account of changed circumstances, [ICE] determines that there is a significant

6

likelihood that the [non-citizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). Upon revocation, the noncitizen must "be notified of the reasons for the revocation of his or her release," and given "an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3). Neither process was followed here. *Rombot v. Souza*, 296 F. Supp. 3d 383, 388 (D. Mass. 2017) ("ICE, like any agency, 'has the duty to follow its own federal regulations.'" (quoting *Haoud v. Ashcroft*, 350 F.3d 201, 205 (1st Cir. 2003)). As Petitioner was denied procedural safeguards to ensure his re-detention was justified, there is a serious risk of his liberty being erroneously deprived.

Finally, the government's interest in detaining Petitioner without procedural safeguards is negligible. *R.D.T.M.*, 2025 WL 2686866 at *6. Respondent has put forth no compelling interest to support arresting and re-detaining Petitioner without notice or a hearing. There is no indication on the record that circumstances have changed such that Petitioner's removal to Armenia is imminent.[5] Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community." (cleaned up)).

Here, Respondent mentions Petitioner's criminal history very briefly three times in the opposition brief (in the introduction, background, and argument sections), noting that Petitioner has a "vast criminal history" and has been "convicted for burglary multiple times." (ECF No. 7 at

---

[5]     Though Petitioner's habeas petition challenges only his re-detention and not the Government's efforts to deport him to Armenia, the Court notes that numerous courts, including in this Circuit, have held that ICE's third-country removal policy is unconstitutional. *See*, *e.g.*, *Vu v. Noem*, No. 1:25-cv-01366-KES-SKO, 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025); *Nguyen v. Scott*, No. 2:25-cv-01398, 2025 WL 2419288, at *18–23 (W.D. Wash. Aug. 21, 2025); *Zakzouk v. Becerra*, No. 25-cv-06254-KAW, 2025 WL 2899220, at *4 (N.D. Cal. Oct. 10, 2025); *Baltodano v. Bondi*, No. C25-1958RSL, 2025 WL 2987766, at *2–3 (W.D. Wash. Oct. 23, 2025). This Court agrees with those well-reasoned decisions.

7

1–2.)  Petitioner notes that his last conviction was for a misdemeanor conviction in 2010, now 16 years ago, and that nearly all his prior convictions were reduced to misdemeanors, dismissed, set aside, or expunged.  (ECF No. 12 at 5 (citing ECF No. 7-1 at 7–18).)  Despite these convictions, Respondent does not point to any evidence in the record that ICE re-detained Petitioner in the entire 26 years that Petitioner was released on supervision.  (ECF No. 1 at 2; ECF No. 12 at 4.)  Respondent does not make *any* substantive argument that Petitioner is a danger to the community or a flight risk.  (*See generally* ECF No. 7.)  Further, as Petitioner notes, Respondent appears to claim that Petitioner's detention is due to his final order of removal, not for violating any specific conditions of his release.  (ECF No. 12 at 5.)  Therefore, on the record before the Court, at the time Respondent detained Petitioner, Respondent had no legitimate interest.

Moreover, the cost and time of procedural safeguards are minimal here.  Notice and custody hearings are routine processes for Respondent with minimal burden.  Any delay in re-detention (if justified) for time to provide notice and a hearing would have been minimal.  It is also less of a fiscal and administrative burden for Respondent to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him.  *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to notice and a hearing to determine whether re-detention was warranted.  Respondent did not provide either.  Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.    Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a TRO.  The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]"  *Hernandez*, 872 F.3d at 995.  Such harm is present here.  (ECF No. 1 at 15–23.)  Moreover, "[i]t is well established that the deprivation of constitutional rights

'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)).  "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Warsoldier v. Woodford*, 418 F.3d 989, 1001–02 (9th Cir. 2005); *see also Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) ("Deprivation of physical liberty by detention constitutes irreparable harm.").  In addition to harms imposed by his continued immigration detention, Petitioner has shown he is likely to succeed on the merits of his constitutional claim. The Court thus finds Petitioner has demonstrated irreparable harm.

                          C.        Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)).  The Court finds these factors also favor Petitioner.  The Government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Rather, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002.  Additionally, and as noted above, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  In sum, the last two *Winter* factors also weigh in Petitioner's favor.

Having found Petitioner has satisfied each of the *Winter* factors, the Court GRANTS Petitioner's Motion for a TRO and orders Petitioner's immediate release on the same terms as he was released prior to his detention.  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy").

///

///

///

9

## IV.    CONCLUSION

IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order is GRANTED (ECF No. 1);

2. Respondent must IMMEDIATELY RELEASE Petitioner Vardan K. (A # 027-667-681) from custody under the same conditions he was released prior to his current detention. Respondent shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing;

3. Respondent is ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a hearing before a neutral fact-finder where: (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future; or (b) Respondent demonstrates by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present;

4. Respondent is ORDERED TO SHOW CAUSE why the Court should not grant Petitioner's habeas petition and enter judgment in favor of Petitioner.  Petitioner's newly appointed counsel may supplement or amend Petitioner's habeas petition **within seven days** of the date of this Order.  Respondent shall file responsive papers **within ten days** of the date of this Order.  Petitioner may file a reply **within thirteen days** of the date of this Order.  The parties shall indicate in their briefing whether they request a hearing; and

5. The matter is not set for a hearing, though the Court may set one should it later be determined that a hearing is necessary; and

6. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived.  Courts regularly waive security in cases like this one.  *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

IT IS SO ORDERED.

//

//

10

Date: March 13, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

11